

**UNITED STATES BANKRUPTCY COURT**
**Northern District of California**
**U.S. Courthouse and Federal Building**
**280 South First Street Room 3035**
**San Jose, California 95113-3099**
**(408) 535-5118**

FILED

2007 MAY 31  P 3: 44

RICHARD W. WIEKING
CLERK
U.S. DISTRICT COURT
NO. DIST. OF CA. S

**Gloria L. Franklin**
**Clerk of Court**

Richard W. Wieking, Clerk
United States District Court
280 South First Street
San Jose, CA 95113

C07  02851  JF

Re:    *Case Name:  Leticia I. Acaya*
       *Case Number:  06-51741-MM*
       *Bankruptcy Judge Name: Marilyn Morgan*

Dear Mr. Wieking:

[ ] Enclosed please find the notice of appeal, certified copy of the docket and order being appealed and related papers from BAP and designated items to form the record on appeal for assignment to a district court judge.

[X ] Enclosed please find a conformed copy of the notice of appeal, election to district court document, as well as a certified copy of the docket and order being appealed for assignment to a district court judge.

[ ] Enclosed please find the record of designated items and a certificate of record for an appeal that has been previously sent to the district court.

[ ] Enclosed please find a Bankruptcy Judge's Recommendation that Appeal Be Dismissed and the Notice of Appeal and associated documents filed with the Bankruptcy Court.

Please acknowledge receipt of this appeal by stamping the district court case number on a copy of this letter and return it to Angela Wong .

Gloria L. Franklin, Clerk
United States Bankruptcy Court

Dated: <u>May 31, 2007</u>          By: _____

Angela Wong,  Deputy Clerk

1   DONALD H. CRAM, III (State Bar No. 160004)
    DUANE M. GECK (State Bar No. 114823)
2   SEVERSON & WERSON
    A Professional Corporation
3   One Embarcadero Center, Suite 2600
    San Francisco, CA  94111
4   Telephone:  (415) 398-3344
    Facsimile:  (415) 956-0439
5
    Attorneys for Secured Creditor
6   WELLS FARGO FINANCIAL ACCEPTANCE

7                 UNITED STATES BANKRUPTCY COURT

8            FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                       SAN JOSE DIVISION

10  In re:                          )   No.  06-51741-MMOR
                                    )
11  LETICIA I. ACAYA,               )
                                    )
12          Debtor.                 )   **NOTICE OF APPEAL**
                                    )
13                                  )
                                    )   Chapter 13
14                                  )
                                    )
15                                  )
                                    )   Judge:  The Honorable Marilyn Morgan
16                                  )
                                    )
17  _____)

18          WELLS FARGO FINANCIAL ACCEPTANCE, secured creditor in the above-entitled

19  action, appeals under 28 U.S.C. section 158 from this Court's Order on Objection to Confirmation

20  of Chapter 13 Plan entered May 18, 2007, a copy of which is attached hereto and incorporated by

21  reference.

22          The parties to the order appealed from and the names of their respective attorneys are as

23  follows:

24

25

26

27

28

1    **Debtor**:

2    LETICIA I. ACAYA

3        Rodney M. Kleman, Esq.
         Shian MacLean, Esq.
         Law Offices of Rodney M. Kleman
4        400 Camino El Estero
         Monterey, CA 93940
5

6        Telephone:  (831) 649-0200
         Facsimile:  (831) 649-8279
7    **Trustee**:

8    DEVIN DERHAM-BURK

9        Devin Derham-Burk
         Chapter 13 Trustee
         P.O. Box 50013
10       San Jose, CA 95150

11       Telephone:  (408) 354-8151
         Facsimile:  (408) 354-5513
12   **Secured Creditor**:

13

     WELLS FARGO FINANCIAL ACCEPTANCE
14

15       David G. Epstein, Esq.
         Haynes and Boone, LLP
         901 Main Street
16       Dallas, TX  75202

17       Telephone:  (214) 651-5459
         Facsimile:  (214) 200-0947
18

19       Donald H. Cram, III, Esq.
         Duane M. Geck, Esq.
         Severson & Werson
20       One Embarcadero Center, 26th Floor
         San Francisco, CA 94111
21

22       Telephone:  (415) 398-3344
         Facsimile:  (415) 956-0439

23

24

25

26

27

28

1    DATED:  May 25, 2007

2                                              SEVERSON & WERSON
                                              A Professional Corporation
3

4                                              By:  /s/ Donald H. Cram, III
5                                                   Donald H. Cram, III

6                                              Attorneys for Secured Creditor
                                              WELLS FARGO FINANCIAL ACCEPTANCE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Entered on Docket
**May 18, 2007**
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed May 18, 2007

_Marilyn Morgan_
Marilyn Morgan
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| In re: | Case No. 06-51741-MM |
| **LETICIA I. ACAYA,** | Chapter 13 |
| Debtor. | **OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN** |

### INTRODUCTION

Wells Fargo Financial Acceptance (WFFA) objects to confirmation of Leticia Acaya's proposed chapter 13 plan. At issue is whether the negative equity from Acaya's trade-in vehicle should be treated as purchase money for the purposes of the hanging paragraph of § 1325(a) or whether the entire transaction has been transformed, entirely losing its purchase money status, or whether the dual status rule is applicable in California.

### FACTUAL BACKGROUND

The facts are undisputed. Leticia Acaya purchased a 2005 Chevrolet Cavalier vehicle for $9,288 for her personal use on June 15, 2005, which is fewer than 910 days before the petition date in this case. Acaya financed the purchase of the Cavalier with a loan from the dealer, executing a Motor Vehicle Contract & Security Agreement. The amount financed included the following:

1

OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

| | |
|---|---|
| Purchase price of vehicle | $9,288.00 |
| Document fees | 45.00 |
| Optional service contract | 2,495.00 |
| GAP insurance | 600.00 |
| License fees | 135.00 |
| California tire fees | 8.75 |
| Sales tax | 676.64 |
| Smog certificate | 8.00 |
| **Subtotal** | **$13,256.39** |

To facilitate the purchase, Acaya traded in her 2003 Ford Taurus, receiving a $7,000 trade-in value. At the time, she had a remaining balance of $13,683 on her loan for the Taurus. The dealer rolled into the new loan the negative equity of $6,683, which is the difference between the outstanding balance on the Ford Taurus loan and that vehicle's trade-in value. The end result was that Acaya financed a total of $19,939.39 at an annual percentage rate of fourteen and one-half percent, payable over sixty months in installments of $440.15. The dealer subsequently assigned the Motor Vehicle Contract & Security Agreement to WFFA.

Acaya commenced this chapter 13 case on September 7, 2006. As of the petition date, the net payoff under the agreement with WFFA was $17,099.89. WFFA filed a proof of claim on September 12, asserting a secured claim in that amount. Acaya proposes to pay WFFA's secured claim based on a mid-range Kelly Blue Book value of $9,757 at seven percent interest, with the balance of its claim to be treated as unsecured. Unsecured creditors will receive no dividend.

WFFA objects to the proposed treatment of its claim under the plan, asserting that it is entitled to repayment of the full contract balance. It further contends that if the court concludes that the purchase money obligation does not include the negative equity in the trade-in vehicle, the court should adopt the dual status rule, rejecting the transformation rule, and find that the secured creditor has a purchase money security interest to the extent the debt was incurred to enable Acaya to acquire the new vehicle.

2

<div style="text-align: right">UNITED STATES BANKRUPTCY COURT<br>For The Northern District Of California</div>

<div style="text-align: center">LEGAL DISCUSSION</div>

Prior to October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), debtors could bifurcate claims into secured and unsecured portions pursuant to 11 U.S.C. § 506(a). To the extent the claim was undersecured, the debtor could pay that portion as an unsecured claim. This is commonly referred to as "cramdown." However, under BAPCPA, a provision was added to the end of § 1325(a)(9) that prevents the bifurcation of certain claims. This unnumbered provision, referred to as the "hanging paragraph," provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing. . . .

In order to avoid cramdown, four conditions must be satisfied: (1) the creditor has a purchase money security interest; (2) the debt was incurred within 910 days preceding the filing of the petition; (3) the collateral for the debt is a motor vehicle; and (4) the motor vehicle was acquired for the personal use of the debtor. The only requirement that is in dispute is whether WFFA has a purchase money security interest.

A purchase money security interest is "an exceptional category in the statutory scheme that affords priority" over other creditors. Matthews v. Transamerica Financial Services (In re Matthews), 724 F.2d 798, 801 (9th Cir. 1984). Because the Bankruptcy Code does not define what constitutes a purchase money security interest, courts uniformly refer to state law to make the determination. Billings v. Avco Colorado Industrial Bank (In re Billings), 838 F.2d 405, 406 (10th Cir. 1988); Pristas v. Landaus of Plymouth, Inc. (In re Pristas), 742 F.2d 797, 800 (3rd Cir. 1984). The Uniform Commercial Code as adopted in California provides in pertinent part:

> (a)    In this section:
>
> > (1)    "Purchase money collateral" means goods or software that secures a purchase money obligation incurred with respect to that collateral.
> >
> > (2)    "Purchase money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.

<div style="text-align: center">3</div>

---

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

1        (b)    A security interest in goods is a purchase money security interest as follows:

2                (1)    To the extent that the goods are purchase money collateral with respect
                          to that security interest. . . .

3

4    Cal. U. Com. Code § 9103.  Section 9103 of the California Uniform Commercial Code (UCC) defines

5    a "purchase money security interest" by reference to "purchase money collateral," which in turn

6    incorporates the term "purchase money obligation."  A "purchase money obligation" is defined by

7    reference to the "price" of the collateral or the "value given" to enable the debtor to acquire rights in

8    the collateral.  The term "price," however, is not defined in the section.  The official comment to the

9    section amplifies the definitions by making clear that additional charges are included in the terms

10   "purchase money obligation," "price," and "value given."  It provides:

11       [T]he definition of "purchase-money obligation," the "price" of collateral or the "value
    given to enable" includes obligations for expenses incurred in connection with acquiring

12       rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs
    of storage in transit, demurrage, administrative charges, expenses of collection and

13       enforcement, attorneys' fees, **and other similar obligations.**

14       The concept of "purchase-money security interest" requires a close nexus between the
    acquisition of the collateral and the secured obligation.  (Emphasis added.)

15

16   Cal. U. Com. Code § 9103, com. 3.  However, the comment does not specify whether the negative

17   equity in a trade-in is included in these terms.

18       WFFA asserts that because § 2981(e) of the California Automobile Sales Finance Act (ASFA)

19   defines "cash price" to include the negative equity in a trade-in vehicle, the term "price" as used in

20   California UCC § 9103(a)(2) similarly includes negative equity.  ASFA § 2981(e) provides:

21       As used on this chapter, ***unless the context otherwise requires***:

22       (e) "Cash price" means the amount for which the seller would sell and transfer to the
    buyer unqualified title to the motor vehicle described in the conditional sale contract, if

23       the property were sold for cash at the seller's place of business on the date the contract
    is executed, and shall include taxes to the extent imposed on the cash sale and the cash

24       price of accessories or services related to the sale, including, but not limited to, delivery,
    installation, alterations, modifications, improvements, document preparation fees, a

25       service contract, a vehicle contract cancellation option agreement, and ***payment of a
    prior credit or lease balance remaining on property being traded in.***

26

27   Cal. Civ. Code § 2981(e)(emphasis added).  WFFA relies on <u>In re Graupner</u>, a case with similar facts

28   that was decided under Georgia law.  In that case, the bankruptcy court read the Georgia UCC definition

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

4

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

1   of purchase money obligation *in pari materia* with the provisions of the Georgia Motor Vehicle Sales

2   Finance Act, which, like ASFA § 2981(e), includes in the cash sale price any amount paid on a trade-in

3   vehicle. In re Graupner, 356 B.R. 907, 922-23 (M.D. Ga. 2006). Notably, § 9201(b) of the California

4   UCC provides that a transaction subject to division 9 is also subject to the provisions of the ASFA,

5   stating:

6           (b)     A transaction subject to this division [9 of the California Uniform Commercial
                    Code] is subject to . . . the Automobile Sales Finance Act, Chapter 2b
7                   (commencing with Section 2981) of Title 14 of Part 4 of Division 3 off the Civil
                    Code . . . .

8

9   Cal. Com. Code § 9201(b). See also Bank of America v. Lallana, 19 Cal. 4th 203 (1998)(seller must

10  comply with notice provisions of both division 9 of the California UCC and the Rees-Levering Motor

11  Vehicle Sales and Finance Act, the predecessor to the ASFA, as a prerequisite for collection of

12  deficiency judgment). However, it is unclear whether "cash price" as defined in the ASFA is

13  synonymous with "price of the collateral" as used in California UCC § 9103.

14          In determining how the California UCC and the ASFA interrelate for purposes of defining a

15  purchase money security interest, federal courts interpreting state laws apply state rules of statutory

16  construction. Neilson v. Chang (In re First T.D. & Inv., Inc.), 253 F.3d 520, 527 (9th Cir. 2001).

17          California Code of Civil Procedure § 1859 provides that "[i]n the construction of a
            statute the intention of the Legislature . . . is to be pursued, if possible." The California
18          Supreme Court has declared that the "ultimate task" in statutory interpretation "is to
            ascertain the legislature's intent." People v. Massie, 19 Cal.4th 550, 569, 79 Cal. Rptr.
19          2d 816, 967 P.2d 29, 41 (1998), cert. denied, 526 U.S. 1113, 119 S.Ct. 1759, 143
            L.Ed.2d 790 (1999).

20

21  Neilson v. Chang, 253 F.3d at 527. Still, the California Supreme Court has also noted that, where not

22  ambiguous, the words of a statute provide the most reliable indication of legislative intent. Pacific Gas

23  & Elec. Co. v. County of Stanislaus, 16 Cal.4th 1143, 1152, 69 Cal. Rptr. 2d 329, 947 P.2d 291, 297

24  (1997).

25          California UCC § 9103(a)(2) by its terms defines a "purchase money obligation" by reference

26  to "value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact

27  so used." These words are ambiguous in the context of the issue presented by the hanging paragraph,

28  which issue was certainly not contemplated by the California legislature. The Court of Appeals for the

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

5

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

1  Ninth Circuit examined similar language in former § 9107. Matthews, 724 F.2d at 801. Matthews

2  involved a refinance of purchase money debt secured by household goods. The court held that the

3  refinance destroyed the purchase money character entirely because the proceeds of the new loan were

4  not used to acquire rights in the collateral. The court stated:

5      Purchase money security . . . affords priority to its holder over other creditors . . . only
       if the security is given for the precise purpose as defined in the statute. And we should
6      not lose sight of the fact that the lender chooses the form.

7  Id.

8      The California legislature enacted the ASFA to provide protection for the unsophisticated motor

9  vehicle consumer. Cerra v. Blackstone, 172 Cal. App. 3d 604, 608 (Cal. Ct. App. (6th Dist.) 1985);

10  Hernandez v. Atlantic Finance Co., 105 Cal. App. 3d 65, 69 (Cal. Ct. App. (2nd Dist.) 1980); Final

11  Report of the Assembly Interim Committee on Finance and Insurance, 15 Assembly Interim Committee

12  Reports No. 24 (1961) (quoted in The Rees-Levering Motor Vehicle Sales and Finance Act, 10 UCLA

13  L. Rev. 125, 127 (1962)). The ASFA serves to protect motor vehicle purchasers from abusive selling

14  practices and excessive charges by requiring full disclosure of all items of cost. Stasher v. Harger-

15  Haldeman, 58 Cal.2d 23, 29 (1962); Thompson v. 10,000 RV Sales, Inc., 130 Cal. App. 4th 950, 966

16  (Cal. Ct. App. (4th Dist.) 2005); Hernandez, 105 Cal. App. 3d at 69. In particular, the California

17  legislature amended the ASFA in 1999 to revise the definition of "cash price" and the requirements for

18  itemizing the amount financed "to clarify how a creditor deals with the financing of the vehicle. . . ."

19  Thompson v. 10,000 RV Sales, 130 Cal. App. 4th at 977 (quoting Analysis of Sen. Bill No. 1092, Sen.

20  Comm. on Judiciary (1999-2000 Reg. Sess.), as amended April. 27, 1999, p.2)).

21      In particular, the bill requires: (1) an itemized disclosure of the agreed value of the
        property being traded in, the prior credit or lease balance owing on the traded in
22      property, the net agreed value, any deferred down payment, the amount of any rebate,
        the remaining amount to be paid as a downpayment, and the total downpayment; and (2)
23      a separate itemization of any prior credit of lease balance that is being financed in the
        new transaction. . . .
24
        Apparently, it was a common practice for automobile dealers to disclose a negative
25      number on the "downpayment" line in circumstances involving a negative equity trade
        in, and then to increase the "total amount financed" of the newly financed vehicle by a
26      like sum. However, . . . this practice confused consumers, who, when looking over the
        itemization sheet, believed that a negative number on the downpayment line should
27      reduce the total amount financed rather than increase it.

28

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

6

OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

1        Under the revised staff commentary to Regulation Z, a zero, not a negative number, is
2  now required to appear on the "downpayment" line, unless there is also a cash payment
   involved. In addition, any prior credit or lease balance remaining in the property being
3  traded-in is now required to be separately listed as a positive figure in the "itemization
   of amount financed."

4  *Analysis of Sen. Bill No. 1092,* Assembly Comm. on Judiciary (1999-2000 Reg. Sess.). The amendment

5  conforms to federal Regulation Z, which authorizes the financing of prior credit balances on trade-in

6  vehicles so long as the amount financed is clearly and separately itemized, and is consistent with the

7  ASFA's remedial purpose of protecting consumers from inaccurate and unfair credit practices through

8  full and honest disclosures. <u>Thompson v. 10,000 RV Sales</u>, 130 Cal. App. 4th at 977-78.

9        The legislative history of the ASFA makes plain that the ASFA is a consumer protection statute

10  that imposes disclosure requirements on dealers and is not helpful in determining what constitutes a

11  purchase money security interest under the California UCC. Importantly, the prefatory statement to

12  ASFA §2981(e) qualifies the application of the definition of "cash price" by providing  "unless the

13  context otherwise requires," a qualification that invites consideration of the context.  There is no

14  indication in the statute or the legislative history that the 1999 amendment to "cash price" was intended

15  to effect a departure from the traditional understanding of a purchase money security interest.  As other

16  courts have noted, rolling up negative equity into a new loan does not "enable" most vehicle purchases.

17  <u>In re Westfall</u>, __ B.R. __, 2007 WL 981730 (Bankr. N.D. Ohio Mar. 30, 2007); <u>In re Price</u>, __ B.R. __,

18  2007 WL 664534 (Bankr. E.D.N.C. Mar. 6, 2007); <u>In re Peaslee</u>, 358 B.R. 545 (Bankr. W.D. N.Y.

19  2006). I conclude that the amount used to pay the negative equity does not constitute part of the price

20  of the collateral or value given to acquire rights in the collateral as contemplated in California UCC

21  § 9103(a)(2).  Because financing the negative equity in a trade-in vehicle does not give rise to a

22  purchase money security interest, the hanging paragraph does not apply to this portion of WFFA's

23  secured claim.

24        Once a transaction is determined to be partially purchase money and partially nonpurchase

25  money, California UCC § 9103(h) leaves to the court's discretion whether to apply the dual status rule

26  or the transformation rule to the treatment of the secured claim.  Although the Ninth Circuit in

27  <u>Matthews</u> adopted a position equivalent to the transformation rule, the facts in <u>Matthews</u> provided no

28  basis for adoption of the dual status rule.

<div align="center">7</div>

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

1        Under the dual status rule, adopted in Pristas, a security interest is a purchase money security

2    interest only to the extent it secures the purchase price of the collateral, even if it secures other items.

3    The inclusion of a nonpurchase money component does not destroy the purchase money character. The

4    rationale is derived from former § 9-107 of the UCC, which provided that a security interest is a

5    purchase money security interest "to the extent" it is taken or retained to secure all or part of its price.

6    Pristas, 742. F.2d at 800-01. It supports a policy of encouraging refinancing under circumstances where

7    the creditor has the burden of demonstrating the extent to which a security interest retains its purchase

8    money character, benefitting both buyer and seller by facilitating the sale of consumer goods. Borg-

9    Warner Acceptance Corp. v. Tascosa Nat'l Bank, 784 S.W.2d 129, 135 (Tex. App. 1990).

10        Under the transformation rule, recognized in Southtrust Bank of Alabama Nat'l Ass'n v. Borg-

11    Warner Acceptance Corp., 760 F.2d 1240, 1242-43 (11th Cir. 1985), the inclusion of a nonpurchase

12    money component transforms the entire claim and destroys the purchase money character. There is no

13    longer a "pure" purchase money security interest. Pristas, 742. F.2d at 800. The policy underlying the

14    transformation rule as applied in consumer goods cases is to prevent overreaching creditors from

15    retaining title to all items covered under a consolidation contract until the last item purchased is paid

16    for. Borg-Warner Acceptance Corp. v. Tascosa Nat'l Bank, 784 S.W.2d at 134-35.

17        In the context of the hanging paragraph, courts that have rejected the dual status rule and applied

18    the transformation rule have found that the circumstances of the loan documentation made it impossible

19    to allocate the secured claim between the negative equity and the purchase money obligation. See Price,

20    ___ B.R. ___, 2007 WL 664534; Peaslee, 358 B.R. 545. In this case, however, the ASFA imposes such

21    stringent requirements upon California automobile dealers for disclosure and itemization of costs that

22    the portion of the secured debt attributable to the purchase price of the vehicle is easily traceable. In

23    light of the traceability, I adopt the dual status rule for determination of the treatment of WFFA's claim.

24    I reserve the issue of allocation of payments pending further briefing.

25

26                       **CONCLUSION**

27        The consumer protection purposes of ASFA suggest that ASFA's definition of "cash price"

28    should not be incorporated into the California UCC for purposes of determining a purchase money

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

8

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

1  security interest.  Consequently, WFFA's purchase money security interest does not include amounts

2  used to pay the negative equity in a trade-in vehicle.  Instead, the dual status rule provides an appropriate

3  tool in determining the extent of WFFA's purchase money security interest.  For these reasons, the

4  objection of WFFA to confirmation of the debtor's plan is sustained.  Acaya may file an amended plan

5  consistent with this decision.

6         Good cause appearing, IT IS SO ORDERED.

7

8                    **\* \* \* END OF ORDER \* \* \***

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

Case No. 06-51741-MM

## SERVICE LIST

RODNEY KLEMAN
SHIAN MACLEAN
LAW OFFICE OF RODNEY M KLEMAN
400 CAMINO EL ESTERO
MONTEREY CA 93940

DONALD H CRAM
KATRINA V STOLC
SEVERSON & WERSON PC
ONE EMBARCADERO CTR SUITE 2600
SAN FRANCISCO CA 94111

DEVIN DERHAM-BURK
CHAPTER 13 TRUSTEE
PO BOX 50013
SAN JOSE CA 95150

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

10

OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

1  DONALD H. CRAM, III (State Bar No. 160004)
   KATRINA V. STOLC (State Bar No. 226557)
2  DUANE M. GECK (State Bar No. 114823)
   SEVERSON & WERSON, P.C.
3  One Embarcadero Center, Suite 2600
   San Francisco, CA  94111
4  Telephone:  (415) 677-5536
   Facsimile:   (415) 677-5664
5  e-mail:  dhc@severson. com

6  Attorneys for Creditor
   WELLS FARGO FINANCIAL ACCEPTANCE

7                    UNITED STATES BANKRUPTCY COURT

8                    NORTHERN DISTRICT OF CALIFORNIA

9                            SAN JOSE DIVISION

10
   In re                          )    Case No.  06-51741-MMOR
11 LETICIA I. ACAYA,              )
                                  )    Chapter 13
12         Debtor(s).             )
                                  )
13                                )
                                  )
14                                )
                                  )
15                                )
                                  )
16                                )
                                  )
17 ─────────────────────────────── )

18                     **CERTIFICATE OF SERVICE**

19      I, the undersigned, declare that I am over the age of 18 and am not a party to this action.  I

20 am employed in the City and County of San Francisco, California; my business address is

21 Severson & Werson, One Embarcadero Center, Suite 2600, San Francisco, California 94111.

22      On the date below, I served a copy, with all exhibits (if any), of the following

23 document(s):

24      • **NOTICE OF APPEAL**

25      • **STATEMENT OF ELECTION TO HAVE APPEAL HEARD BY DISTRICT
           COURT INSTEAD OF BANKRUPTCY APPELLATE PANEL**
26
   on all interested parties in said case addressed as follows:
27

28 10749/0000/600824.1

   Acaya 10749-929              OTP Certificate of Service            page 1

1   Rodney M. Kleman, Esq.      Devin Derham-Burk
     Law Offices of Rodney M. Kleman  Chapter 13 Trustee
2   400 Camino El Estero        P.O. Box 50013
     Monterey, CA 93940         San Jose, CA 95150-0013

3

4   David G. Epstein, Esq.
     Haynes and Boone, LLP
5   901 Main Street
     Dallas, TX 75202

6

7   [X] **(BY MAIL)** I caused an envelope to be deposited in the mail at San Francisco, California,

8   with first class postage thereon fully prepaid.

9       I am readily familiar with Severson & Werson's practice of collecting and processing

10  correspondence for mailing. On the same day that correspondence is placed for collection and

11  mailing, it is deposited in the ordinary course of business with the United States Postal Service in

12  sealed envelopes with first class postage fully prepaid.

13      I declare under penalty of perjury under the laws of the United States of America that the

14  foregoing is true and correct. This declaration is executed in San Francisco, California, on May

15  25, 2007.

16

17                  /s/ Bill Bush
                    Bill Bush

18

19

20

21

22

23

24

25

26

27

28   10749/0000/600824.1

     Acaya 10749-929           OTP Certificate of Service          page 2

```
MIME-Version:1.0
From:BKECF_CANB@canb.uscourts.gov
To:CourtMail@canblei.canb.circ9.dcn
Bcc: RichardR@w-legal.com, ctdocs@ch13sj.com, dhc@severson.com, ecf@debtdoctors.com, kvs@severson.com, notices@becket-lee.com
Message-Id:<6211639@canb.uscourts.gov>
Subject:06-51741 Notice of Appeal
```

Content-Type: text/html

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

<div align="center">

**U.S. Bankruptcy Court**

**Northern District of California**

</div>

Notice of Electronic Filing

The following transaction was received from Cram, Donald H. entered on 5/25/2007 at 2:41 PM PDT and filed on 5/25/2007

**Case Name:**     Leticia I. Acaya
**Case Number:**    06-51741
**Document Number:** 33

**Docket Text:**
Notice of Appeal to District Court , Fee Amount $ 255. (RE: related document(s)[30] Order). Appellant Designation due by 6/4/2007. Transmission to District Court due by 6/25/2007. (Attachments: # (1) Exhibit Opinion and Order on Objection to Confirmation of Chapter 13 Plan# (2) Certificate of Service) Filed by Creditor Wells Fargo Financial Acceptance (Cram, Donald)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\bbush\My Documents\PDF files\acaya notice of appeal.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=5/25/2007] [FileNumber=6211637-0
] [01fb153dc88d218cde570e54077d6a770bd7c860bc89c309474cfb6560ac693e648
dd03e752fd2a894d252a1ed0c596d8f064628fa504a5772445a4b69a41298]]
**Document description:**Exhibit Opinion and Order on Objection to Confirmation of Chapter 13 Plan
**Original filename:**C:\Documents and Settings\bbush\My Documents\PDF files\acaya order.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=5/25/2007] [FileNumber=6211637-1
] [3c36743eba2cb216cac4e32b178a6cde18bb8472e2132cbd0be3aa8fcfec05a17cd
5e2f30be571795526fc0e0cd57f97b47d0c96d0efb305a008d920bf8dba8f]]
**Document description:**Certificate of Service
**Original filename:**C:\Documents and Settings\bbush\My Documents\PDF files\acaya cos.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=5/25/2007] [FileNumber=6211637-2
] [3b4d0795b949b29f0a17b99132ead12701c0afa58710cb3bce7ed5753261c46c438
4d7c70682fce3a41997484df3a319e91e9f7cabf210ea4a705ae54c7d2fcd]]

**06-51741 Notice will be electronically mailed to:**

Alane A. Becket    notices@becket-lee.com

Donald H. Cram    dhc@severson.com

Devin Derham-Burk    ctdocs@ch13sj.com

Rodney M. Kleman    ecf@debtdoctors.com

Office of the U.S. Trustee / SJ    USTPRegion17.SJ.ECF@usdoj.gov

Richard Ralston    RichardR@w-legal.com

Katrina Stolc    kvs@severson.com

**06-51741 Notice will not be electronically mailed to:**

1   DONALD H. CRAM, III (State Bar No. 160004)
    DUANE M. GECK (State Bar No. 114823)
2   SEVERSON & WERSON
    A Professional Corporation
3   One Embarcadero Center, Suite 2600
    San Francisco, CA  94111
4   Telephone:  (415) 398-3344
    Facsimile:  (415) 956-0439
5
    Attorneys for Secured Creditor
6   WELLS FARGO FINANCIAL ACCEPTANCE

7                    UNITED STATES BANKRUPTCY COURT

8              FOR THE NORTHERN DISTRICT OF CALIFORNIA

9                          SAN JOSE DIVISION

10  In re:                              )    No.  06-51741-MMOR
                                        )
11  LETICIA I. ACAYA,                   )
                                        )
12           Debtor.                    )    **STATEMENT OF ELECTION TO**
                                        )    **HAVE APPEAL HEARD BY DISTRICT**
13                                      )    **COURT INSTEAD OF BANKRUPTCY**
                                        )    **APPELLATE PANEL**
14                                      )
                                        )
15                                      )    Chapter 13
                                        )
16                                      )
                                        )    Judge:  The Honorable Marilyn Morgan
17  _____)

18          Appellant, WELLS FARGO FINANCIAL ACCEPTANCE, secured creditor in the above-

19  entitled action, has filed a Notice of Appeal from this Court's Order on Objection to Confirmation

20  of Chapter 13 Plan entered May 18, 2007, and submits this statement pursuant to 28 U.S.C.

21  section 158(c)(1)(A) and Bankruptcy Rule 8001(e), electing to have the appeal heard by the

22  District Court instead of the Bankruptcy Appellate Panel.

23

24

25

26

27

28
    _____
    10749/0929/628589.1                         STATEMENT OF ELECTION
                                                     *In re Acaya*
                                                Case No. 06-51741-MMOR

1    DATED:  May 25, 2007

2                                    SEVERSON & WERSON
                                     A Professional Corporation
3

4
                                     By:  /s/ Donald H. Cram, III
5                                         Donald H. Cram, III

6                                    Attorneys for Secured Creditor
                                     WELLS FARGO FINANCIAL ACCEPTANCE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

```
MIME-Version:1.0
From:BKECF_CANB@canb.uscourts.gov
To:CourtMail@canblei.canb.circ9.dcn
Bcc: RichardR@w-legal.com, ctdocs@ch13sj.com, dhc@severson.com, ecf@debtdoctors.com, kvs@severson.com, notices@becket-lee.com
Message-Id:<6211735@canb.uscourts.gov>
Subject:06-51741 Statement of Election on Appeal
```

Content-Type: text/html

**\*\*\*NOTE TO PUBLIC ACCESS USERS\*\*\* You may view the filed documents once without charge. To avoid later charges, download a copy of each document during this first viewing.**

### U.S. Bankruptcy Court

### Northern District of California

Notice of Electronic Filing

The following transaction was received from Cram, Donald H. entered on 5/25/2007 at 2:49 PM PDT and filed on 5/25/2007

**Case Name:**     Leticia I. Acaya
**Case Number:**     06-51741
**Document Number:** 34

**Docket Text:**
Statement of Election to District Court, (RE: related document(s)[33] Notice of Appeal, filed by Creditor Wells Fargo Financial Acceptance). Filed by Creditor Wells Fargo Financial Acceptance (Cram, Donald)

The following document(s) are associated with this transaction:

**Document description:**Main Document
**Original filename:**C:\Documents and Settings\bbush\My Documents\PDF files\acaya statement of election.pdf
**Electronic document Stamp:**
[STAMP bkecfStamp_ID=1017961465 [Date=5/25/2007] [FileNumber=6211733-0
] [182ec111050a29bdb3637896d09928d3cd2c086d34795ea3d61885940576da03035
bc4df97f29a6d4da9f2456d4b44b5c83c89f63b93e71107bba71302eee684]]

**06-51741 Notice will be electronically mailed to:**

Alane A. Becket     notices@becket-lee.com

Donald H. Cram     dhc@severson.com

Devin Derham-Burk     ctdocs@ch13sj.com

Rodney M. Kleman     ecf@debtdoctors.com

Office of the U.S. Trustee / SJ     USTPRegion17.SJ.ECF@usdoj.gov

Richard Ralston     RichardR@w-legal.com

Katrina Stolc     kvs@severson.com

**06-51741 Notice will not be electronically mailed to:**

Entered on Docket
May 18, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

**The following constitutes
the order of the court. Signed May 18, 2007**

*Marilyn Morgan*

Marilyn Morgan
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

**LETICIA I. ACAYA,**

      Debtor.

Case No. 06-51741-MM

Chapter 13

**OPINION AND ORDER ON
OBJECTION TO CONFIRMATION OF
CHAPTER 13 PLAN**

### INTRODUCTION

Wells Fargo Financial Acceptance (WFFA) objects to confirmation of Leticia Acaya's proposed chapter 13 plan. At issue is whether the negative equity from Acaya's trade-in vehicle should be treated as purchase money for the purposes of the hanging paragraph of § 1325(a) or whether the entire transaction has been transformed, entirely losing its purchase money status, or whether the dual status rule is applicable in California.

### FACTUAL BACKGROUND

The facts are undisputed. Leticia Acaya purchased a 2005 Chevrolet Cavalier vehicle for $9,288 for her personal use on June 15, 2005, which is fewer than 910 days before the petition date in this case. Acaya financed the purchase of the Cavalier with a loan from the dealer, executing a Motor Vehicle Contract & Security Agreement. The amount financed included the following:

1

OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

| | |
|---|---|
| Purchase price of vehicle | $9,288.00 |
| Document fees | 45.00 |
| Optional service contract | 2,495.00 |
| GAP insurance | 600.00 |
| License fees | 135.00 |
| California tire fees | 8.75 |
| Sales tax | 676.64 |
| Smog certificate | 8.00 |
| **Subtotal** | **$13,256.39** |

To facilitate the purchase, Acaya traded in her 2003 Ford Taurus, receiving a $7,000 trade-in value. At the time, she had a remaining balance of $13,683 on her loan for the Taurus. The dealer rolled into the new loan the negative equity of $6,683, which is the difference between the outstanding balance on the Ford Taurus loan and that vehicle's trade-in value. The end result was that Acaya financed a total of $19,939.39 at an annual percentage rate of fourteen and one-half percent, payable over sixty months in installments of $440.15. The dealer subsequently assigned the Motor Vehicle Contract & Security Agreement to WFFA.

Acaya commenced this chapter 13 case on September 7, 2006. As of the petition date, the net payoff under the agreement with WFFA was $17,099.89. WFFA filed a proof of claim on September 12, asserting a secured claim in that amount. Acaya proposes to pay WFFA's secured claim based on a mid-range Kelly Blue Book value of $9,757 at seven percent interest, with the balance of its claim to be treated as unsecured. Unsecured creditors will receive no dividend.

WFFA objects to the proposed treatment of its claim under the plan, asserting that it is entitled to repayment of the full contract balance. It further contends that if the court concludes that the purchase money obligation does not include the negative equity in the trade-in vehicle, the court should adopt the dual status rule, rejecting the transformation rule, and find that the secured creditor has a purchase money security interest to the extent the debt was incurred to enable Acaya to acquire the new vehicle.

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

**LEGAL DISCUSSION**

Prior to October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), debtors could bifurcate claims into secured and unsecured portions pursuant to 11 U.S.C. § 506(a).  To the extent the claim was undersecured, the debtor could pay that portion as an unsecured claim.  This is commonly referred to as "cramdown."  However, under BAPCPA, a provision was added to the end of § 1325(a)(9) that prevents the bifurcation of certain claims.  This unnumbered provision, referred to as the "hanging paragraph," provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing. . . .

In order to avoid cramdown, four conditions must be satisfied:  (1) the creditor has a purchase money security interest; (2) the debt was incurred within 910 days preceding the filing of the petition; (3) the collateral for the debt is a motor vehicle; and (4) the motor vehicle was acquired for the personal use of the debtor.  The only requirement that is in dispute is whether WFFA has a purchase money security interest.

A purchase money security interest is "an exceptional category in the statutory scheme that affords priority" over other creditors.  Matthews v. Transamerica Financial Services (In re Matthews), 724 F.2d 798, 801 (9th Cir. 1984).  Because the Bankruptcy Code does not define what constitutes a purchase money security interest, courts uniformly refer to state law to make the determination.  Billings v. Avco Colorado Industrial Bank (In re Billings), 838 F.2d 405,  406 (10th Cir. 1988); Pristas v. Landaus of Plymouth, Inc. (In re Pristas), 742 F.2d 797, 800 (3rd Cir. 1984).  The Uniform Commercial Code as adopted in California provides in pertinent part:

> (a)   In this section:
>
> > (1)   "Purchase money collateral" means goods or software that secures a purchase money obligation incurred with respect to that collateral.
> >
> > (2)   "Purchase money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.

OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

1    (b)    A security interest in goods is a purchase money security interest as follows:

2        (1)    To the extent that the goods are purchase money collateral with respect
3               to that security interest. . . .

4   Cal. U. Com. Code § 9103.  Section 9103 of the California Uniform Commercial Code (UCC) defines

5   a "purchase money security interest" by reference to "purchase money collateral," which in turn

6   incorporates the term "purchase money obligation."  A "purchase money obligation" is defined by

7   reference to the "price" of the collateral or the "value given" to enable the debtor to acquire rights in

8   the collateral.  The term "price," however, is not defined in the section.  The official comment to the

9   section amplifies the definitions by making clear that additional charges are included in the terms

10  "purchase money obligation," "price," and "value given."  It provides:

11      [T]he definition of "purchase-money obligation," the "price" of collateral or the "value
        given to enable" includes obligations for expenses incurred in connection with acquiring
12      rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs
        of storage in transit, demurrage, administrative charges, expenses of collection and
13      enforcement, attorneys' fees, **and other similar obligations.**

14      The concept of "purchase-money security interest" requires a close nexus between the
        acquisition of the collateral and the secured obligation.  (Emphasis added.)
15

16  Cal. U. Com. Code § 9103, com. 3.  However, the comment does not specify whether the negative

17  equity in a trade-in is included in these terms.

18      WFFA asserts that because § 2981(e) of the California Automobile Sales Finance Act (ASFA)

19  defines "cash price" to include the negative equity in a trade-in vehicle, the term "price" as used in

20  California UCC § 9103(a)(2) similarly includes negative equity.  ASFA § 2981(e) provides:

21      As used in this chapter, ***unless the context otherwise requires***:

22      (e) "Cash price" means the amount for which the seller would sell and transfer to the
        buyer unqualified title to the motor vehicle described in the conditional sale contract, if
23      the property were sold for cash at the seller's place of business on the date the contract
        is executed, and shall include taxes to the extent imposed on the cash sale and the cash
24      price of accessories or services related to the sale, including, but not limited to, delivery,
        installation, alterations, modifications, improvements, document preparation fees, a
25      service contract, a vehicle contract cancellation option agreement, and ***payment of a
        prior credit or lease balance remaining on property being traded in.***
26

27  Cal. Civ. Code § 2981(e)(emphasis added).  WFFA relies on In re Graupner, a case with similar facts

28  that was decided under Georgia law.  In that case, the bankruptcy court read the Georgia UCC definition

---

4

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

1   of purchase money obligation *in pari materia* with the provisions of the Georgia Motor Vehicle Sales

2   Finance Act, which, like ASFA § 2981(e), includes in the cash sale price any amount paid on a trade-in

3   vehicle. In re Graupner, 356 B.R. 907, 922-23 (M.D. Ga. 2006). Notably, § 9201(b) of the California

4   UCC provides that a transaction subject to division 9 is also subject to the provisions of the ASFA,

5   stating:

6           (b)     A transaction subject to this division [9 of the California Uniform Commercial
                    Code] is subject to . . . the Automobile Sales Finance Act, Chapter 2b
7                   (commencing with Section 2981) of Title 14 of Part 4 of Division 3 off the Civil
                    Code . . . .

8

9   Cal. Com. Code § 9201(b). See also Bank of America v. Lallana, 19 Cal. 4th 203 (1998)(seller must

10  comply with notice provisions of both division 9 of the California UCC and the Rees-Levering Motor

11  Vehicle Sales and Finance Act, the predecessor to the ASFA, as a prerequisite for collection of

12  deficiency judgment).   However, it is unclear whether "cash price" as defined in the ASFA is

13  synonymous with "price of the collateral" as used in California UCC § 9103.

14          In determining how the California UCC and the ASFA interrelate for purposes of defining a

15  purchase money security interest, federal courts interpreting state laws apply state rules of statutory

16  construction. Neilson v. Chang (In re First T.D. & Inv., Inc.), 253 F.3d 520, 527 (9th Cir. 2001).

17          California Code of Civil Procedure § 1859 provides that "[i]n the construction of a
            statute the intention of the Legislature . . . is to be pursued, if possible." The California
18          Supreme Court has declared that the "ultimate task" in statutory interpretation "is to
            ascertain the legislature's intent." People v. Massie, 19 Cal.4th 550, 569, 79 Cal. Rptr.
19          2d 816, 967 P.2d 29, 41 (1998), cert. denied, 526 U.S. 1113, 119 S.Ct. 1759, 143
            L.Ed.2d 790 (1999).

20

21  Neilson v. Chang, 253 F.3d at 527. Still, the California Supreme Court has also noted that, where not

22  ambiguous, the words of a statute provide the most reliable indication of legislative intent. Pacific Gas

23  & Elec. Co. v. County of Stanislaus, 16 Cal.4th 1143, 1152, 69 Cal. Rptr. 2d 329, 947 P.2d 291, 297

24  (1997).

25          California UCC § 9103(a)(2) by its terms defines a "purchase money obligation" by reference

26  to "value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact

27  so used." These words are ambiguous in the context of the issue presented by the hanging paragraph,

28  which issue was certainly not contemplated by the California legislature. The Court of Appeals for the

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

5

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1 Ninth Circuit examined similar language in former § 9107. Matthews, 724 F.2d at 801. Matthews

2 involved a refinance of purchase money debt secured by household goods. The court held that the

3 refinance destroyed the purchase money character entirely because the proceeds of the new loan were

4 not used to acquire rights in the collateral. The court stated:

5 > Purchase money security . . . affords priority to its holder over other creditors . . . only
> if the security is given for the precise purpose as defined in the statute. And we should
6 > not lose sight of the fact that the lender chooses the form.

7 Id.

8     The California legislature enacted the ASFA to provide protection for the unsophisticated motor

9 vehicle consumer. Cerra v. Blackstone, 172 Cal. App. 3d 604, 608 (Cal. Ct. App. (6th Dist.) 1985);

10 Hernandez v. Atlantic Finance Co., 105 Cal. App. 3d 65, 69 (Cal. Ct. App. (2nd Dist.) 1980); Final

11 Report of the Assembly Interim Committee on Finance and Insurance, 15 Assembly Interim Committee

12 Reports No. 24 (1961) (quoted in The Rees-Levering Motor Vehicle Sales and Finance Act, 10 UCLA

13 L. Rev. 125, 127 (1962)). The ASFA serves to protect motor vehicle purchasers from abusive selling

14 practices and excessive charges by requiring full disclosure of all items of cost. Stasher v. Harger-

15 Haldeman, 58 Cal.2d 23, 29 (1962); Thompson v. 10,000 RV Sales, Inc., 130 Cal. App. 4th 950, 966

16 (Cal. Ct. App. (4th Dist.) 2005); Hernandez, 105 Cal. App. 3d at 69. In particular, the California

17 legislature amended the ASFA in 1999 to revise the definition of "cash price" and the requirements for

18 itemizing the amount financed "to clarify how a creditor deals with the financing of the vehicle. . . . "

19 Thompson v. 10,000 RV Sales, 130 Cal. App. 4th at 977 (quoting Analysis of Sen. Bill No. 1092, Sen.

20 Comm. on Judiciary (1999-2000 Reg. Sess.), as amended April. 27, 1999, p.2)).

21 > In particular, the bill requires: (1) an itemized disclosure of the agreed value of the
> property being traded in, the prior credit or lease balance owing on the traded in
22 > property, the net agreed value, any deferred down payment, the amount of any rebate,
> the remaining amount to be paid as a downpayment, and the total downpayment; and (2)
23 > a separate itemization of any prior credit of lease balance that is being financed in the
> new transaction. . . .

24

25 > Apparently, it was a common practice for automobile dealers to disclose a negative
> number on the "downpayment" line in circumstances involving a negative equity trade
> in, and then to increase the "total amount financed" of the newly financed vehicle by a
26 > like sum. However, . . . this practice confused consumers, who, when looking over the
> itemization sheet, believed that a negative number on the downpayment line should
27 > reduce the total amount financed rather than increase it.

28

---

6

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1      Under the revised staff commentary to Regulation Z, a zero, not a negative number, is
2  now required to appear on the "downpayment" line, unless there is also a cash payment
   involved.  In addition, any prior credit or lease balance remaining in the property being
3  traded-in is now required to be separately listed as a positive figure in the "itemization
   of amount financed."

4  *Analysis of Sen. Bill No. 1092,* Assembly Comm. on Judiciary (1999-2000 Reg. Sess.).  The amendment

5  conforms to federal Regulation Z, which authorizes the financing of prior credit balances on trade-in

6  vehicles so long as the amount financed is clearly and separately itemized, and is consistent with the

7  ASFA's remedial purpose of protecting consumers from inaccurate and unfair credit practices through

8  full and honest disclosures.  Thompson v. 10,000 RV Sales, 130 Cal. App. 4th at 977-78.

9      The legislative history of the ASFA makes plain that the ASFA is a consumer protection statute

10 that imposes disclosure requirements on dealers and is not helpful in determining what constitutes a

11 purchase money security interest under the California UCC.  Importantly, the prefatory statement to

12 ASFA §2981(e) qualifies the application of the definition of "cash price" by providing  "unless the

13 context otherwise requires," a qualification that invites consideration of the context.   There is no

14 indication in the statute or the legislative history that the 1999 amendment to "cash price" was intended

15 to effect a departure from the traditional understanding of a purchase money security interest.  As other

16 courts have noted, rolling up negative equity into a new loan does not "enable" most vehicle purchases.

17 In re Westfall, __ B.R. __, 2007 WL 981730 (Bankr. N.D. Ohio Mar. 30, 2007); In re Price, __ B.R. __,

18 2007 WL 664534 (Bankr. E.D.N.C. Mar. 6, 2007); In re Peaslee, 358 B.R. 545 (Bankr. W.D. N.Y.

19 2006).  I conclude that the amount used to pay the negative equity does not constitute part of the price

20 of the collateral or value given to acquire rights in the collateral as contemplated in California UCC

21 § 9103(a)(2).   Because financing the negative equity in a trade-in vehicle does not give rise to a

22 purchase money security interest, the hanging paragraph does not apply to this portion of WFFA's

23 secured claim.

24     Once a transaction is determined to be partially purchase money and partially nonpurchase

25 money, California UCC § 9103(h) leaves to the court's discretion whether to apply the dual status rule

26 or the transformation rule to the treatment of the secured claim.  Although the Ninth Circuit in

27 Matthews adopted a position equivalent to the transformation rule, the facts in Matthews provided no

28 basis for adoption of the dual status rule.

7

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

1    Under the dual status rule, adopted in <u>Pristas</u>, a security interest is a purchase money security

2    interest only to the extent it secures the purchase price of the collateral, even if it secures other items.

3    The inclusion of a nonpurchase money component does not destroy the purchase money character. The

4    rationale is derived from former § 9-107 of the UCC, which provided that a security interest is a

5    purchase money security interest "to the extent" it is taken or retained to secure all or part of its price.

6    <u>Pristas</u>, 742. F.2d at 800-01. It supports a policy of encouraging refinancing under circumstances where

7    the creditor has the burden of demonstrating the extent to which a security interest retains its purchase

8    money character, benefitting both buyer and seller by facilitating the sale of consumer goods. <u>Borg-</u>

9    <u>Warner Acceptance Corp. v. Tascosa Nat'l Bank</u>, 784 S.W.2d 129, 135 (Tex. App. 1990).

10    Under the transformation rule, recognized in <u>Southtrust Bank of Alabama Nat'l Ass'n v. Borg-</u>

11    <u>Warner Acceptance Corp.</u>, 760 F.2d 1240, 1242-43 (11th Cir. 1985), the inclusion of a nonpurchase

12    money component transforms the entire claim and destroys the purchase money character. There is no

13    longer a "pure" purchase money security interest. <u>Pristas</u>, 742. F.2d at 800. The policy underlying the

14    transformation rule as applied in consumer goods cases is to prevent overreaching creditors from

15    retaining title to all items covered under a consolidation contract until the last item purchased is paid

16    for. <u>Borg-Warner Acceptance Corp. v. Tascosa Nat'l Bank</u>, 784 S.W.2d at 134-35.

17    In the context of the hanging paragraph, courts that have rejected the dual status rule and applied

18    the transformation rule have found that the circumstances of the loan documentation made it impossible

19    to allocate the secured claim between the negative equity and the purchase money obligation. <u>See</u> <u>Price</u>,

20    __ B.R. __, 2007 WL 664534; <u>Peaslee</u>, 358 B.R. 545. In this case, however, the ASFA imposes such

21    stringent requirements upon California automobile dealers for disclosure and itemization of costs that

22    the portion of the secured debt attributable to the purchase price of the vehicle is easily traceable. In

23    light of the traceability, I adopt the dual status rule for determination of the treatment of WFFA's claim.

24    I reserve the issue of allocation of payments pending further briefing.

25

26    <center>**CONCLUSION**</center>

27    The consumer protection purposes of ASFA suggest that ASFA's definition of "cash price"

28    should not be incorporated into the California UCC for purposes of determining a purchase money

<div align="center">8</div>

1   security interest.  Consequently, WFFA's purchase money security interest does not include amounts

2   used to pay the negative equity in a trade-in vehicle.  Instead, the dual status rule provides an appropriate

3   tool in determining the extent of  WFFA's purchase money security interest.  For these reasons, the

4   objection of WFFA to confirmation of the debtor's plan is sustained.  Acaya may file an amended plan

5   consistent with this decision.

6          Good cause appearing, IT IS SO ORDERED.

7

8                              **\* \* \* END OF ORDER \* \* \***

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**UNITED STATES BANKRUPTCY COURT**
**For The Northern District Of California**

9

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

1  Case No. 06-51741-MM

2

3  <u>**SERVICE LIST**</u>

4

5

6  RODNEY KLEMAN
   SHIAN MACLEAN

7  LAW OFFICE OF RODNEY M KLEMAN
   400 CAMINO EL ESTERO

8  MONTEREY CA 93940

9  DONALD H CRAM
   KATRINA V STOLC

10 SEVERSON & WERSON PC
   ONE EMBARCADERO CTR SUITE 2600

11 SAN FRANCISCO CA 94111

12

13 DEVIN DERHAM-BURK
   CHAPTER 13 TRUSTEE

14 PO BOX 50013
   SAN JOSE CA 95150

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**