UNITED STATES BANKRUPTCY COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

| | |
|---|---|
| In re<br><br>DAVID COHRS,<br><br>      Debtor. | Case No. 07-21431-A-13G<br><br>Docket Control No. FW-1<br><br>Date: June 25, 2007<br>Time: 9:00 a.m. |

    On June 25, 2007 at 9:00 a.m., the court considered the debtor's motion to value the collateral of Americredit as well as Americredit's objection to that motion.  The court's ruling on the motion and the objection is appended to the amended minutes of the hearing.  Because that ruling constitutes a "reasoned explanation" of the court's decision, it is also posted on the court's Internet site, www.caeb.uscourts.gov, in a text-searchable format as required by the E-Government Act of 2002.  The official record, however, remains the ruling appended to the minutes of the hearing.

**AMENDED FINAL RULING**

    The motion will be denied and the objection will be sustained.

    The court first notes that it invited further briefing from the debtor to address in greater detail the arguments raised in an objection to the motion.  Nothing was filed.

    On October 13, 2005, the debtor financed the purchase of a 2005 pickup truck with a loan provided by the objecting creditor.  On March 5, 2007, less than 910 days after the truck was purchased, the debtor filed this chapter 13 petition.

    The debtor's proposed plan provides for the creditor's

**EXHIBIT A**

1  secured claim in Class 2.  Class 2 claims are paid in full.
2  However, because the plan is accompanied by a motion to value the
3  truck, the debtor is seeking a determination that the creditor's
4  secured claim is limited to the value of its collateral, the
5  truck.  See 11 U.S.C. § 506(a)(2).
6      The creditor objects to this treatment, contending that its
7  claim cannot be "stripped down" to the value of the truck because
8  the "hanging paragraph" following 11 U.S.C. § 1325(a)(9)
9  [hereafter, "section 1325(a)(*)"] prohibits the application of
10 section 506(a)(2) to its claim.  That is, it maintains that its
11 secured claim is the amount actually owed by the debtor as of the
12 petition date and it is not subject to reduction because the
13 truck happens to be worth less than the amount owed.
14     Section 1325(a)(*) provides that "section 506 shall not
15 apply to a claim described in [section 1325(a)(5)] if the
16 creditor has a purchase money security interest," the secured
17 debt was incurred within 910 days of the filing of the petition,
18 and the collateral is a motor vehicle acquired for the personal
19 use of the debtor.
20     The dispute concerning the applicability of section
21 1325(a)(*) to this case boils down to whether the creditor holds
22 a purchase money security interest.  While there is no dispute
23 that its loan financed the purchase of the truck, it also
24 provided the debtor with the funds, approximately $6,000,
25 necessary to pay a loan secured by the vehicle the debtor traded-
26 in when purchasing the truck.  The debtor maintains that the
27 inclusion of these funds with the amount necessary to purchase
28 the truck destroys the purchase money character of the loan from

-2-

**EXHIBIT A**

the creditor and the security interest given in connection with the transaction.

The Bankruptcy Code includes no definition of the phrase, "purchase money security interest." The logical place to look for a definition is the nonbankruptcy law applicable to the contract between the parties.

Cal. Comm. Code § 9103 provides in relevant part:

> (a) In this section:
> (1) "Purchase money collateral" means goods ... that secure[] a purchase money obligation incurred with respect to that collateral.
> (2) "Purchase money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or value given to enable the debtor to acquire rights in or use of the collateral if the value is in fact so used.
> (b) A security interest in goods is a purchase money security interest as follows:
> (1) to the extent that the goods are purchase money collateral with respect to that security interest.

So, California's version of the Uniform Commercial Code ties the definition of a "purchase money security interest" to the definition of "purchase money security collateral," which in turn is dictated by the definition of "purchase money obligation." Not only is the "price" paid for the collateral a purchase money obligation, so is "value given to enable the debtor to acquire rights in" the collateral. The "value given to enable" language is broad enough to include the "negative equity" financed by the creditor that enabled the debtor to purchase the truck.

This interpretation is supported by official comment of the drafters of the Uniform Commercial Code. Note 3 to section 9103 provides in part:

> Subsection (a) defines 'purchase-money collateral' and 'purchase-money obligation.' These terms are essential to the description of what constitutes a

**EXHIBIT A**

    purchase-money security interest under subsection (b).
As used in subsection (a)(2), the definition of
'purchase-money obligation,' the 'price of collateral'
or the 'value given to enable' includes obligations for
expenses incurred in connection with acquiring the
rights in the collateral, sales taxes, duties, finance
charges, interest, freight charges, costs of storage in
transit, demurrage, administrative charges, expenses of
collection and enforcement, attorney's fees, and other
similar obligations.
    The concept of 'purchase-money security interest'
requires a close nexus between the acquisition of
collateral and the secured obligation.

While it is true that the drafters did not include amounts loaned to pay off negative equity owed on a trade-in vehicle among the charges that can be considered part of the price or value given, the drafters' list is not an exclusive one. The drafters are merely giving examples.

When a car buyer offers to trade-in a vehicle as part of the purchase price for another vehicle, the charges incidental to transferring the trade-in vehicle are part of the purchase price of the new vehicle. Those charges are incurred to "enable the debtor to acquire rights in" the new vehicle. Therefore, when a lender, like the creditor in this case, finances the purchase of the new vehicle and, as part of the transaction also pays off an outstanding balance owed on the trade-in vehicle, the loan extended is a purchase money obligation of the buyer, the new vehicle is a purchase money collateral, and the lender's security interest is a purchase money security interest.

To the extent other bankruptcy courts have come to a contrary conclusion, this court respectfully disagrees with those courts. See In re Peasley, 358 B.R. 545, 556-58 (Bankr. W.D.N.Y. 2006); In re Acaya, 2007 WL 1492475, *2-3 (Bankr. N.D. Cal. 2007). These courts apparently read section 9103 and Note 3 to

**EXHIBIT A**

limit the sweep of the phrases, "price of collateral" and the "value given to enable" a buyer to acquire property, to include only incidental expenses related to the purchase.

This court reads section 9103 and Note 3 to require only a "close nexus" between the acquisition of the property and the secured obligation. That is, it must be part of a single transaction and all components of the obligation incurred must have been for the purpose of acquiring the property securing the new obligation.

So, if the debtor had borrowed money both to finance the new car and pay off his old car, but had not traded in the old vehicle to the seller, this court would conclude that the inclusion of the pay off amount in the loan would destroy its purchase money character. But here, the old vehicle was traded in to the seller as part of the value given to acquire the new vehicle.

Other California law supports the notion that financing negative equity owed on a vehicle traded in as part of the purchase of a new vehicle is considered part of the price paid for the new vehicle. Cal. Civil Code § 2981(e) provides:

> 'Cash price' means the amount for which the seller would sell and transfer to the buyer unqualified title to the motor vehicle described in the conditional sale contract, if the property were sold for cash at the seller's place of business on the date the contract is executed, and shall include taxes to the extent imposed on the cash sale and the cash price of accessories or services related to the sale, including, but not limited to, delivery, installation, alterations, modifications, improvements, document preparation fees, a service contract, a vehicle contract cancellation option agreement, and **payment of a prior credit or lease balance remaining on the property being traded in**." [Emphasis added.]

**EXHIBIT A**

And, not only does section 2981 suggest to the court that section 9103 should be interpreted consistently to include negative equity within the definition of a purchase money obligation, but California's version Article 9 of the Uniform Commercial Code is expressly made subject to section 2981. Cal. Comm. Code § 9201(b) provides that "*[a] transaction subject to this division is subject to any applicable rule of law which establishes a different rule for consumers [including] ... the Automobile Sales Finance Act, Chapter 2b (commencing with Section 2981)....*"

The court agrees, given section 9201(b), that sections 9103(a)(2) and section 2981 must be interpreted consistently. To the extent it might be argued that these definitions conflict, or that section 2981 does not dictate the interpretation of section 9103, because Cal. Comm. Code § 9201(c) makes section 9103 and the remainder of Division 9 of the California Commercial Code subject to section 2981 of the Automobile Sales Finance Act, the court further concludes that, in the context of auto sales, the value given to acquire a vehicle includes negative equity in a vehicle traded in as part of the purchase price of a new vehicle. Hence, a lender financing such a transaction acquires a purchase money security interest and the debtor incurs a corresponding purchase money obligation.

Therefore, section 1325(a)(*) is applicable and the debtor may not strip down the objecting creditor's secured claim to the value of the vehicle as of the date of the petition. The motion will be denied.

**EXHIBIT A**