**Record on Appeal – Tab 8**

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

BEFORE THE HONORABLE MARILYN MORGAN, JUDGE

| | |
|---|---|
| In Re:<br><br>LETICIA I. ACAYA,<br><br>             Debtor. | ) Case No. 06-51741-MM-OR<br>) Chapter 13<br>)<br>)<br>) <u>CONTINUED HEARING</u> on<br>) <u>CONFIRMATION of PLAN</u><br>)<br>)<br>) Friday, February 16, 2007<br>) Salinas, California |

<u>Appearances</u>:

| | |
|---|---|
| For the Debtor: | Trevor Merkis, Esq.<br>Law Offices of Rodney M. Kleman<br>400 Camino El Estero<br>Monterey, California  93940<br>(831) 649-0200 |
| For Objecting Creditor Wells Fargo Financial Acceptance (via telephone): | Donald H. Cram, Esq.<br>Severson & Werson, P.C.<br>One Embarcadero Center, Suite 2600<br>San Francisco, California  94111<br>(415) 398-3344, telephone; 956-0439, fax |
| Digital Court Recorder: | United States Bankruptcy Court<br>Clerk of the Court<br>Lupe Barron<br>280 South First Street, Room 3035<br>San Jose, California  95113<br>(408) 535-5430 |
| Certified Electronic Transcriber: | Palmer Reporting Services<br>P. O. Box 30727<br>Stockton, California  95213-0727 |

Proceedings recorded by digital recording;
transcript produced by federally-approved transcription service.

*Continued Hearing on Confirmation of Plan*                                    2

1  Friday, February 16, 2007                          10:25 o'clock a.m.
2                    P R O C E E D I N G S
3          THE COURT:  Okay.  That brings us to the Acaya matter.
4          MR. MERKIS:  Once again, Your Honor, Trevor Merkis for
5  the debtor.
6          MR. CRAM:  Good morning, Your Honor.  Don Cram with
7  Severson and Werson on behalf of objecting creditor, Wells
8  Fargo.
9          THE COURT:  Okay.  Well, good morning to both of you.
10         I've got to say that I really appreciated the extra
11 effort that you both went to in preparation of your briefs.  I
12 think these are really significant issues that you've raised.
13 And it was clear to me that you put a great deal of thought and
14 energy into, each of you, presenting your sides.
15         MR. MERKIS:  Thank you, Your Honor.
16         THE COURT:  Is there anything you'd like to —
17         MR. CRAM:  Thank you, Your Honor.  It is a —
18         THE COURT:  — add to your briefs?
19         MR. MERKIS:  We're prepared to submit, Your Honor.
20         THE COURT:  Okay.  Mr. Cram?
21         MR. CRAM:  Just a couple of things briefly, Your
22 Honor.
23         Thank you for — for reviewing the briefs.  It is an
24 important issue and one in first impression with respect to this
25 District and the Ninth Circuit for that matter.

*Continued Hearing on Confirmation of Plan*    3

1    And I think the pleadings, the briefs point out that
2  there's really, you know, three options and three lines of cases
3  that the courts are going nationally.
4    And one is the courts that are falling — that are
5  falling into the category of these types of situations are, in
6  fact, 910 claims. Those cases that hold that there's a dual
7  status, meaning that there's a purchase money security interest
8  that's going to be noncramdownable.
9    And, finally, the cases that hold that where there's
10 anything in addition to the purchase money that the entire
11 amount is transformed and we follow the old rule.
12    And Wells Fargo thinks that, initially, that this
13 should be held as a 910 claim because California law, both the
14 Commercial Code, as well as the Motor Vehicle Code, couches the
15 situation that was decided in *In re Graupner*. And really that's
16 a well-decided case.
17    And I think it goes to great lengths to look at the
18 state — the status of the state law to try to determine what
19 Congress meant by "purchase money security interest."
20    And I think if the Court looks at that case and then
21 looks at the California Commercial Code, as well as the Motor
22 Vehicle Code in California, it will find that both the language
23 of those codes is identical to the Georgia code in *Graupner*.
24    And on that basis, Wells Fargo would ask that the
25 Court hold consistently with *Graupner*.

*Continued Hearing on Confirmation of Plan* 4

1        Alternatively, Wells Fargo would state that this is a
2   dual-status case. In that respect I think *Peaslee* can be
3   distinguished, as well as *Matthews*.
4        In the New York case in *Peaslee*, the court essentially
5   couldn't — was unable to determine what the amount was actually
6   financed as purchase money and what amount constituted the
7   negative trade-in.
8        And I think the court ruled the way it did because it
9   felt that the creditor hadn't met its evidentiary burden in
10  pulling those two numbers out for the court.
11       And I haven't seen the motor vehicle contract in that
12  New York case, but the California motor vehicle contracts are
13  very clear in that they explicitly set forth what — the amount
14  that was financed, as well as the negative trade-in amount.
15       And so it can be — the Court can easily determine what
16  amounts constituted the purchase price for the vehicle, as
17  opposed to the amounts financed for the negative trade-in.
18       And so I believe *Peaslee* is distinguishable. And the
19  case of *In re Matthews*, that's distinguishable in that that was
20  a complete refinance where there was no new merchandise being
21  purchased. It was just a complete refinance.
22       And so it's understandable how the Court held in the
23  *Matthews* case that the purchase money security interest was
24  completely transformed where the full amount is refinanced.
25       And I just do appreciate the Court looking at this

*Continued Hearing on Confirmation of Plan* 5

1  matter carefully. And that's all I have to add, Your Honor.
2          MR. MERKIS: If I may, very briefly, Your Honor.
3          THE COURT: Yes.
4          MR. MERKIS: Well, obviously I disagree with counsel
5  with respect to *Peaslee* being distinguishable here, while the
6  California sales contract does differentiate between the
7  negative trade-in. And, as Don Cram indicated, I haven't seen
8  the contract in the *Peaslee* case.
9          However, I do not think that simply because it was
10 broken down in the contract it will be easy for this Court to
11 determine which amount is purchase money and which is not.
12         For instance, the payments received prepetition, would
13 those be applied to the purchase money amount or to the
14 nonpurchase money amount. And it would be almost to unwind the
15 — unwind and have the accounting process that would be able to
16 come out with an amount today that's purchase money and
17 nonpurchase money.
18         So just like in *Peaslee*, it's going to be almost
19 impossible for the Court to differentiate these. And based upon
20 that, we think the transformation rule is better, and the value
21 should be determined per 506(a)(2) to be the retail value.
22         THE COURT: You know I've learned that nothing is ever
23 easy. So I am going to give this a good look, and I really —
24         I'm sorry. Mr. Cram, do you have anything further to
25 add?

PALMER REPORTING SERVICES
P. O. Box 30727    Stockton, California 95213-0727    (800) 665-6251
Case: 06-51741    Doc #: 45    Filed: 07/04/2007    Page 5 of 7

Page 73

*Continued Hearing on Confirmation of Plan* 6

1      MR. CRAM: I don't, Your Honor. Just — I guess — I
2  mean from a procedural standpoint — I mean depending on how the
3  Court rules, there may be some additional issues as to what the
4  actual value is.
5      So I guess, depending on how the Court rules, it may
6  be worthwhile to actually set forth a continued hearing date for
7  a status conference to see where we are after the Court's
8  ruling.
9      THE COURT: Okay. I will include a continued hearing
10 date in my decision when I issue it.
11     MR. MERKIS: Thank you, Your Honor.
12     THE COURT: Okay.
13     MR. CRAM: Thanks, Your Honor.
14     THE COURT: Thank you both very much.
15     (The hearing was concluded at 10:32 o'clock a.m.)
16                       —o0o—
17
18
19
20
21
22
23
24
25

```
State of California          )
                             )   SS.
County of San Joaquin        )
```

I, Susan Palmer, certify that the foregoing is a true and correct transcript, to the best of my ability, of the above pages, of the digital recording provided to me by the United States Bankruptcy Court, Northern District of California, of the proceedings taken on the date and time previously stated in the above matter.

I further certify I am not a party to nor in any way interested in the outcome of this matter.

I am a Certified Electronic Reporter and Transcriber through the American Association of Electronic Reporters and Transcribers, Certificate No. 00124. Palmer Reporting Services is approved by the Administrative Office of the United States Courts to officially prepare transcripts for the U.S. District and Bankruptcy Courts.

Susan Palmer<br>
Palmer Reporting Services<br><br>
Dated June 29, 2007

PALMER REPORTING SERVICES
P. O. Box 30727   Stockton, California   95213-0727   (800) 665-6251
Case: 06-51741   Doc #: 45   Filed: 07/04/2007   Page 7 of 7

Page 75