**Record on Appeal – Tab 10**

| | |
|---|---|
| 1 | DONALD H. CRAM, III (State Bar No. 160004) |
|   | DUANE M. GECK (State Bar No. 114823) |
| 2 | SEVERSON & WERSON |
|   | A Professional Corporation |
| 3 | One Embarcadero Center, Suite 2600 |
|   | San Francisco, CA 94111 |
| 4 | Telephone: (415) 398-3344 |
|   | Facsimile: (415) 956-0439 |
| 5 | |
|   | Attorneys for Secured Creditor |
| 6 | WELLS FARGO FINANCIAL ACCEPTANCE |

UNITED STATES BANKRUPTCY COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | | | |
|---|---|---|---|
| 10 | In re: | ) | No. 06-51741-MMOR |
| 11 | | ) | |
|    | LETICIA I. ACAYA, | ) | |
| 12 | | ) | **NOTICE OF APPEAL** |
|    | Debtor. | ) | |
| 13 | | ) | |
|    | | ) | Chapter 13 |
| 14 | | ) | |
|    | | ) | |
| 15 | | ) | |
|    | | ) | Judge: The Honorable Marilyn Morgan |
| 16 | | ) | |
|    | | ) | |
| 17 | _____ | ) | |

18    WELLS FARGO FINANCIAL ACCEPTANCE, secured creditor in the above-entitled

19 action, appeals under 28 U.S.C. section 158 from this Court's Order on Objection to Confirmation

20 of Chapter 13 Plan entered May 18, 2007, a copy of which is attached hereto and incorporated by

21 reference.

22    The parties to the order appealed from and the names of their respective attorneys are as

23 follows:

10749/0929/628467.1

NOTICE OF APPEAL
*In re Acaya*
Case No. 06-51741-MMOR

Case: 06-51741   Doc #: 33   Filed: 05/25/2007   Page 1 of 3

Page 86

| | |
|---|---|
| 1 | **Debtor:** |
| 2 | LETICIA I. ACAYA |

Rodney M. Kleman, Esq.<br>
Shian MacLean, Esq.<br>
Law Offices of Rodney M. Kleman<br>
400 Camino El Estero<br>
Monterey, CA 93940<br>
<br>
Telephone: (831) 649-0200<br>
Facsimile: (831) 649-8279

**Trustee:**

DEVIN DERHAM-BURK

Devin Derham-Burk
Chapter 13 Trustee
P.O. Box 50013
San Jose, CA 95150

Telephone: (408) 354-8151
Facsimile: (408) 354-5513

**Secured Creditor:**

WELLS FARGO FINANCIAL ACCEPTANCE

David G. Epstein, Esq.
Haynes and Boone, LLP
901 Main Street
Dallas, TX 75202

Telephone: (214) 651-5459
Facsimile: (214) 200-0947

Donald H. Cram, III, Esq.
Duane M. Geck, Esq.
Severson & Werson
One Embarcadero Center, 26th Floor
San Francisco, CA 94111

Telephone: (415) 398-3344
Facsimile: (415) 956-0439

---

10749/0929/628467.1  — 2 —  NOTICE OF APPEAL
*In re Acaya*
Case No. 06-51741-MMOR

1  DATED: May 25, 2007

2                                          SEVERSON & WERSON
                                           A Professional Corporation
3

4
                                           By:  /s/ Donald H. Cram, III
5                                               Donald H. Cram, III

6                                          Attorneys for Secured Creditor
                                           WELLS FARGO FINANCIAL ACCEPTANCE
7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28
   10749/0929/628467.1                    - 3 -                          NOTICE OF APPEAL
                                                                          *In re Acaya*
                                                                      Case No. 06-51741-MMOR



Entered on Docket
May 18, 2007
GLORIA L. FRANKLIN, CLERK
U.S BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

The following constitutes
the order of the court. Signed May 18, 2007

Marilyn Morgan
U.S. Bankruptcy Judge

UNITED STATES BANKRUPTCY COURT

NORTHERN DISTRICT OF CALIFORNIA

In re:

LETICIA I. ACAYA,

Debtor.

Case No. 06-51741-MM

Chapter 13

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

### INTRODUCTION

Wells Fargo Financial Acceptance (WFFA) objects to confirmation of Leticia Acaya's proposed chapter 13 plan. At issue is whether the negative equity from Acaya's trade-in vehicle should be treated as purchase money for the purposes of the hanging paragraph of § 1325(a) or whether the entire transaction has been transformed, entirely losing its purchase money status, or whether the dual status rule is applicable in California.

### FACTUAL BACKGROUND

The facts are undisputed. Leticia Acaya purchased a 2005 Chevrolet Cavalier vehicle for $9,288 for her personal use on June 15, 2005, which is fewer than 910 days before the petition date in this case. Acaya financed the purchase of the Cavalier with a loan from the dealer, executing a Motor Vehicle Contract & Security Agreement. The amount financed included the following:

1

OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

| | |
|---|---|
| Purchase price of vehicle | $9,288.00 |
| Document fees | 45.00 |
| Optional service contract | 2,495.00 |
| GAP insurance | 600.00 |
| License fees | 135.00 |
| California tire fees | 8.75 |
| Sales tax | 676.64 |
| Smog certificate | 8.00 |
| **Subtotal** | **$13,256.39** |

To facilitate the purchase, Acaya traded in her 2003 Ford Taurus, receiving a $7,000 trade-in value. At the time, she had a remaining balance of $13,683 on her loan for the Taurus. The dealer rolled into the new loan the negative equity of $6,683, which is the difference between the outstanding balance on the Ford Taurus loan and that vehicle's trade-in value. The end result was that Acaya financed a total of $19,939.39 at an annual percentage rate of fourteen and one-half percent, payable over sixty months in installments of $440.15. The dealer subsequently assigned the Motor Vehicle Contract & Security Agreement to WFFA.

Acaya commenced this chapter 13 case on September 7, 2006. As of the petition date, the net payoff under the agreement with WFFA was $17,099.89. WFFA filed a proof of claim on September 12, asserting a secured claim in that amount. Acaya proposes to pay WFFA's secured claim based on a mid-range Kelly Blue Book value of $9,757 at seven percent interest, with the balance of its claim to be treated as unsecured. Unsecured creditors will receive no dividend.

WFFA objects to the proposed treatment of its claim under the plan, asserting that it is entitled to repayment of the full contract balance. It further contends that if the court concludes that the purchase money obligation does not include the negative equity in the trade-in vehicle, the court should adopt the dual status rule, rejecting the transformation rule, and find that the secured creditor has a purchase money security interest to the extent the debt was incurred to enable Acaya to acquire the new vehicle.

## LEGAL DISCUSSION

Prior to October 17, 2005, the effective date of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 (BAPCPA), debtors could bifurcate claims into secured and unsecured portions pursuant to 11 U.S.C. § 506(a). To the extent the claim was undersecured, the debtor could pay that portion as an unsecured claim. This is commonly referred to as "cramdown." However, under BAPCPA, a provision was added to the end of § 1325(a)(9) that prevents the bifurcation of certain claims. This unnumbered provision, referred to as the "hanging paragraph," provides:

> For purposes of paragraph (5), section 506 shall not apply to a claim described in that paragraph if the creditor has a purchase money security interest securing the debt that is the subject of the claim, the debt was incurred within the 910-day preceding the date of the filing of the petition, and the collateral for that debt consists of a motor vehicle (as defined in section 30102 of title 49) acquired for the personal use of the debtor, or if collateral for that debt consists of any other thing of value, if the debt was incurred during the 1-year period preceding that filing. . . .

In order to avoid cramdown, four conditions must be satisfied: (1) the creditor has a purchase money security interest; (2) the debt was incurred within 910 days preceding the filing of the petition; (3) the collateral for the debt is a motor vehicle; and (4) the motor vehicle was acquired for the personal use of the debtor. The only requirement that is in dispute is whether WFFA has a purchase money security interest.

A purchase money security interest is "an exceptional category in the statutory scheme that affords priority" over other creditors. Matthews v. Transamerica Financial Services (In re Matthews), 724 F.2d 798, 801 (9th Cir. 1984). Because the Bankruptcy Code does not define what constitutes a purchase money security interest, courts uniformly refer to state law to make the determination. Billings v. Avco Colorado Industrial Bank (In re Billings), 838 F.2d 405, 406 (10th Cir. 1988); Pristas v. Landaus of Plymouth, Inc. (In re Pristas), 742 F.2d 797, 800 (3rd Cir. 1984). The Uniform Commercial Code as adopted in California provides in pertinent part:

> (a)  In this section:
>
> (1)  "Purchase money collateral" means goods or software that secures a purchase money obligation incurred with respect to that collateral.
>
> (2)  "Purchase money obligation" means an obligation of an obligor incurred as all or part of the price of the collateral or for value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used.

3
OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

   (b) A security interest in goods is a purchase money security interest as follows:

     (1) To the extent that the goods are purchase money collateral with respect to that security interest. . . .

Cal. U. Com. Code § 9103. Section 9103 of the California Uniform Commercial Code (UCC) defines a "purchase money security interest" by reference to "purchase money collateral," which in turn incorporates the term "purchase money obligation." A "purchase money obligation" is defined by reference to the "price" of the collateral or the "value given" to enable the debtor to acquire rights in the collateral. The term "price," however, is not defined in the section. The official comment to the section amplifies the definitions by making clear that additional charges are included in the terms "purchase money obligation," "price," and "value given." It provides:

> [T]he definition of "purchase-money obligation," the "price" of collateral or the "value given to enable" includes obligations for expenses incurred in connection with acquiring rights in the collateral, sales taxes, duties, finance charges, interest, freight charges, costs of storage in transit, demurrage, administrative charges, expenses of collection and enforcement, attorneys' fees, **and other similar obligations**.
>
> The concept of "purchase-money security interest" requires a close nexus between the acquisition of the collateral and the secured obligation. (Emphasis added.)

Cal. U. Com. Code § 9103, com. 3. However, the comment does not specify whether the negative equity in a trade-in is included in these terms.

  WFFA asserts that because § 2981(e) of the California Automobile Sales Finance Act (ASFA) defines "cash price" to include the negative equity in a trade-in vehicle, the term "price" as used in California UCC § 9103(a)(2) similarly includes negative equity. ASFA § 2981(e) provides:

> As used on this chapter, *unless the context otherwise requires*:
>
> (e) "Cash price" means the amount for which the seller would sell and transfer to the buyer unqualified title to the motor vehicle described in the conditional sale contract, if the property were sold for cash at the seller's place of business on the date the contract is executed, and shall include taxes to the extent imposed on the cash sale and the cash price of accessories or services related to the sale, including, but not limited to, delivery, installation, alterations, modifications, improvements, document preparation fees, a service contract, a vehicle contract cancellation option agreement, and *payment of a prior credit or lease balance remaining on property being traded in.*

Cal. Civ. Code § 2981(e)(emphasis added). WFFA relies on In re Graupner, a case with similar facts that was decided under Georgia law. In that case, the bankruptcy court read the Georgia UCC definition

4
OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN

of purchase money obligation *in pari materia* with the provisions of the Georgia Motor Vehicle Sales Finance Act, which, like ASFA § 2981(e), includes in the cash sale price any amount paid on a trade-in vehicle. In re Graupner, 356 B.R. 907, 922-23 (M.D. Ga. 2006). Notably, § 9201(b) of the California UCC provides that a transaction subject to division 9 is also subject to the provisions of the ASFA, stating:

> (b)  A transaction subject to this division [9 of the California Uniform Commercial Code] is subject to . . . the Automobile Sales Finance Act, Chapter 2b (commencing with Section 2981) of Title 14 of Part 4 of Division 3 off the Civil Code . . . .

Cal. Com. Code § 9201(b). See also Bank of America v. Lallana, 19 Cal. 4th 203 (1998)(seller must comply with notice provisions of both division 9 of the California UCC and the Rees-Levering Motor Vehicle Sales and Finance Act, the predecessor to the ASFA, as a prerequisite for collection of deficiency judgment). However, it is unclear whether "cash price" as defined in the ASFA is synonymous with "price of the collateral" as used in California UCC § 9103.

In determining how the California UCC and the ASFA interrelate for purposes of defining a purchase money security interest, federal courts interpreting state laws apply state rules of statutory construction. Neilson v. Chang (In re First T.D. & Inv., Inc.), 253 F.3d 520, 527 (9th Cir. 2001).

> California Code of Civil Procedure § 1859 provides that "[i]n the construction of a statute the intention of the Legislature . . . is to be pursued, if possible." The California Supreme Court has declared that the "ultimate task" in statutory interpretation "is to ascertain the legislature's intent." People v. Massie, 19 Cal.4th 550, 569, 79 Cal. Rptr. 2d 816, 967 P.2d 29, 41 (1998), cert. denied, 526 U.S. 1113, 119 S.Ct. 1759, 143 L.Ed.2d 790 (1999).

Neilson v. Chang, 253 F.3d at 527. Still, the California Supreme Court has also noted that, where not ambiguous, the words of a statute provide the most reliable indication of legislative intent. Pacific Gas & Elec. Co. v. County of Stanislaus, 16 Cal.4th 1143, 1152, 69 Cal. Rptr. 2d 329, 947 P.2d 291, 297 (1997).

California UCC § 9103(a)(2) by its terms defines a "purchase money obligation" by reference to "value given to enable the debtor to acquire rights in or the use of the collateral if the value is in fact so used." These words are ambiguous in the context of the issue presented by the hanging paragraph, which issue was certainly not contemplated by the California legislature. The Court of Appeals for the

5
**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

Ninth Circuit examined similar language in former § 9107. Matthews, 724 F.2d at 801. Matthews involved a refinance of purchase money debt secured by household goods. The court held that the refinance destroyed the purchase money character entirely because the proceeds of the new loan were not used to acquire rights in the collateral. The court stated:

> Purchase money security . . . affords priority to its holder over other creditors . . . only if the security is given for the precise purpose as defined in the statute. And we should not lose sight of the fact that the lender chooses the form.

Id.

The California legislature enacted the ASFA to provide protection for the unsophisticated motor vehicle consumer. Cerra v. Blackstone, 172 Cal. App. 3d 604, 608 (Cal. Ct. App. (6th Dist.) 1985); Hernandez v. Atlantic Finance Co., 105 Cal. App. 3d 65, 69 (Cal. Ct. App. (2nd Dist.) 1980); *Final Report of the Assembly Interim Committee on Finance and Insurance*, 15 Assembly Interim Committee Reports No. 24 (1961) (quoted in *The Rees-Levering Motor Vehicle Sales and Finance Act*, 10 UCLA L. Rev. 125, 127 (1962)). The ASFA serves to protect motor vehicle purchasers from abusive selling practices and excessive charges by requiring full disclosure of all items of cost. Stasher v. Harger-Haldeman, 58 Cal.2d 23, 29 (1962); Thompson v. 10,000 RV Sales, Inc., 130 Cal. App. 4th 950, 966 (Cal. Ct. App. (4th Dist.) 2005); Hernandez, 105 Cal. App. 3d at 69. In particular, the California legislature amended the ASFA in 1999 to revise the definition of "cash price" and the requirements for itemizing the amount financed "to clarify how a creditor deals with the financing of the vehicle. . . . " Thompson v. 10,000 RV Sales, 130 Cal. App. 4th at 977 (quoting *Analysis of Sen. Bill No. 1092*, Sen. Comm. on Judiciary (1999-2000 Reg. Sess.), as amended April. 27, 1999, p.2)).

> In particular, the bill requires: (1) an itemized disclosure of the agreed value of the property being traded in, the prior credit or lease balance owing on the traded in property, the net agreed value, any deferred down payment, the amount of any rebate, the remaining amount to be paid as a downpayment, and the total downpayment; and (2) a separate itemization of any prior credit of lease balance that is being financed in the new transaction. . . .
>
> Apparently, it was a common practice for automobile dealers to disclose a negative number on the "downpayment" line in circumstances involving a negative equity trade in, and then to increase the "total amount financed" of the newly financed vehicle by a like sum. However, . . . this practice confused consumers, who, when looking over the itemization sheet, believed that a negative number on the downpayment line should reduce the total amount financed rather than increase it.

> Under the revised staff commentary to Regulation Z, a zero, not a negative number, is now required to appear on the "downpayment" line, unless there is also a cash payment involved. In addition, any prior credit or lease balance remaining in the property being traded-in is now required to be separately listed as a positive figure in the "itemization of amount financed."

*Analysis of Sen. Bill No. 1092*, Assembly Comm. on Judiciary (1999-2000 Reg. Sess.). The amendment conforms to federal Regulation Z, which authorizes the financing of prior credit balances on trade-in vehicles so long as the amount financed is clearly and separately itemized, and is consistent with the ASFA's remedial purpose of protecting consumers from inaccurate and unfair credit practices through full and honest disclosures. Thompson v. 10,000 RV Sales, 130 Cal. App. 4th at 977-78.

The legislative history of the ASFA makes plain that the ASFA is a consumer protection statute that imposes disclosure requirements on dealers and is not helpful in determining what constitutes a purchase money security interest under the California UCC. Importantly, the prefatory statement to ASFA §2981(e) qualifies the application of the definition of "cash price" by providing "unless the context otherwise requires," a qualification that invites consideration of the context. There is no indication in the statute or the legislative history that the 1999 amendment to "cash price" was intended to effect a departure from the traditional understanding of a purchase money security interest. As other courts have noted, rolling up negative equity into a new loan does not "enable" most vehicle purchases. In re Westfall, __ B.R. __, 2007 WL 981730 (Bankr. N.D. Ohio Mar. 30, 2007); In re Price, __ B.R. __, 2007 WL 664534 (Bankr. E.D.N.C. Mar. 6, 2007); In re Peaslee, 358 B.R. 545 (Bankr. W.D. N.Y. 2006). I conclude that the amount used to pay the negative equity does not constitute part of the price of the collateral or value given to acquire rights in the collateral as contemplated in California UCC § 9103(a)(2). Because financing the negative equity in a trade-in vehicle does not give rise to a purchase money security interest, the hanging paragraph does not apply to this portion of WFFA's secured claim.

Once a transaction is determined to be partially purchase money and partially nonpurchase money, California UCC § 9103(h) leaves to the court's discretion whether to apply the dual status rule or the transformation rule to the treatment of the secured claim. Although the Ninth Circuit in Matthews adopted a position equivalent to the transformation rule, the facts in Matthews provided no basis for adoption of the dual status rule.

7
**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

Under the dual status rule, adopted in <u>Pristas</u>, a security interest is a purchase money security interest only to the extent it secures the purchase price of the collateral, even if it secures other items. The inclusion of a nonpurchase money component does not destroy the purchase money character. The rationale is derived from former § 9-107 of the UCC, which provided that a security interest is a purchase money security interest "to the extent" it is taken or retained to secure all or part of its price. <u>Pristas</u>, 742. F.2d at 800-01. It supports a policy of encouraging refinancing under circumstances where the creditor has the burden of demonstrating the extent to which a security interest retains its purchase money character, benefitting both buyer and seller by facilitating the sale of consumer goods. <u>Borg-Warner Acceptance Corp. v. Tascosa Nat'l Bank</u>, 784 S.W.2d 129, 135 (Tex. App. 1990).

Under the transformation rule, recognized in <u>Southtrust Bank of Alabama Nat'l Ass'n v. Borg-Warner Acceptance Corp.</u>, 760 F.2d 1240, 1242-43 (11th Cir. 1985), the inclusion of a nonpurchase money component transforms the entire claim and destroys the purchase money character. There is no longer a "pure" purchase money security interest. <u>Pristas</u>, 742. F.2d at 800. The policy underlying the transformation rule as applied in consumer goods cases is to prevent overreaching creditors from retaining title to all items covered under a consolidation contract until the last item purchased is paid for. <u>Borg-Warner Acceptance Corp. v. Tascosa Nat'l Bank</u>, 784 S.W.2d at 134-35.

In the context of the hanging paragraph, courts that have rejected the dual status rule and applied the transformation rule have found that the circumstances of the loan documentation made it impossible to allocate the secured claim between the negative equity and the purchase money obligation. See <u>Price</u>, __ B.R. __, 2007 WL 664534; <u>Peaslee</u>, 358 B.R. 545. In this case, however, the ASFA imposes such stringent requirements upon California automobile dealers for disclosure and itemization of costs that the portion of the secured debt attributable to the purchase price of the vehicle is easily traceable. In light of the traceability, I adopt the dual status rule for determination of the treatment of WFFA's claim. I reserve the issue of allocation of payments pending further briefing.

## CONCLUSION

The consumer protection purposes of ASFA suggest that ASFA's definition of "cash price" should not be incorporated into the California UCC for purposes of determining a purchase money

8
**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**

security interest. Consequently, WFFA's purchase money security interest does not include amounts used to pay the negative equity in a trade-in vehicle. Instead, the dual status rule provides an appropriate tool in determining the extent of WFFA's purchase money security interest. For these reasons, the objection of WFFA to confirmation of the debtor's plan is sustained. Acaya may file an amended plan consistent with this decision.

Good cause appearing, IT IS SO ORDERED.

* * * END OF ORDER * * *

```
1  Case No. 06-51741-MM
2
3                              SERVICE LIST
4
5
6  RODNEY KLEMAN
   SHIAN MACLEAN
7  LAW OFFICE OF RODNEY M KLEMAN
   400 CAMINO EL ESTERO
8  MONTEREY CA 93940

9  DONALD H CRAM
   KATRINA V STOLC
10 SEVERSON & WERSON PC
   ONE EMBARCADERO CTR SUITE 2600
11 SAN FRANCISCO CA 94111

12
13 DEVIN DERHAM-BURK
   CHAPTER 13 TRUSTEE
14 PO BOX 50013
   SAN JOSE CA 95150
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

UNITED STATES BANKRUPTCY COURT
For The Northern District Of California

10

**OPINION AND ORDER ON OBJECTION TO CONFIRMATION OF CHAPTER 13 PLAN**